1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

SHAYLENE SUSAN NEWBY,

Plaintiff,

8

v.

9

10

COMMISSIONER OF SOCIAL
SECURITY,

11

Defendant.

Case No. 17-cv-00104-MEJ

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

12

13

**INTRODUCTION**

14

Plaintiff Shaylene Susan Newby ("Plaintiff") brings this action pursuant to 42 U.S.C. §

15

405(g), seeking judicial review of a final decision of Defendant Commissioner of Social Security

16

("Defendant") denying Plaintiff's claim for disability benefits. Pending before the Court are the

17

parties' cross-motions for summary judgment. Dkt. Nos. 16, 17. Pursuant to Civil Local Rule 16-

18

5, the motions have been submitted on the papers without oral argument. Having carefully

19

reviewed the parties' positions, the Administrative Record ("AR"), and the relevant legal

20

authority, the Court hereby **GRANTS IN PART** Plaintiff's Motion and **DENIES** Defendant's

21

Cross-Motion for the reasons set forth below.

22

**BACKGROUND**

23

Plaintiff was born on October 11, 1955. AR 66. She graduated from high school where

24

she was enrolled in regular classes. AR 37. After high school, Plaintiff received no other formal

25

education and no type of job training. AR 37-38. Plaintiff's prior work included positions as a

26

caregiver, mortgage clerk, and reception clerk. AR 38, 245.

27

Plaintiff was diagnosed with diabetes mellitus type II and neuropathy in April 2013. AR

28

544-47. Plaintiff reported being significantly fatigued starting in January 2014, and explained she

United States District Court
Northern District of California

1    was falling nearly every day.  AR 481.  Plaintiff was first diagnosed with chronic fatigue

2    syndrome in May 2014.  AR 546, 481.  While supplements initially improved Plaintiff's condition

3    and she did not fall for two to three months, she was still very fatigued and would nap frequently.

4    AR 481.  In approximately August 2014, Plaintiff started falling again.  *Id.*  She was diagnosed

5    with severe anemia, which made her weak and was most likely the cause of her falls.  AR 483; *see*

6    *also* AR 546.  Plaintiff received acupuncture and other treatment for anemia, chronic fatigue

7    syndrome, and neuropathy.  AR 544-47.

8                    **SOCIAL SECURITY ADMINISTRATION PROCEEDINGS**

9            On May 15, 2014, Plaintiff filed a claim for Disability Insurance Benefits, alleging

10   disability beginning on April 15, 2014.  AR 209–24, 244.  On September 18, 2014, the Social

11   Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for

12   disability benefits.  AR 12.  Plaintiff subsequently filed a request for reconsideration, which was

13   denied on March 17, 2015.  AR 12.  On April 7, 2015, Plaintiff requested a hearing before an

14   Administrative Law Judge ("ALJ").  AR 12, 138.  ALJ Mary Beth O'Connor conducted a hearing

15   on July 15, 2016.  AR 30.  Plaintiff testified in person at the hearing and was represented by a

16   client representative, Dan McCaskell.  AR 30.

17   **A.      Plaintiff's Testimony**

18           At the time of the hearing, Plaintiff was using a wheelchair because she had recently

19   broken her leg.  AR 40-41.  Her doctors expected her to make a full recovery.  AR 41.  In the past,

20   she had used a cane to help her with her balance, but the cane had not been prescribed by her

21   treaters.  AR 41.  She used the cane "once in a while" when she "felt fatigued" and it helped her

22   not to fall.  AR 41 (she used the cane for part of the day maybe ten days per month).  Plaintiff's

23   use of a cane does not appear in her medical records, but she did discuss it with her treaters.  AR

24   40-41.

25           Plaintiff testified that she was prevented from working by chronic fatigue syndrome,

26   exhaustion, memory loss, difficulty holding a memory or a conversation for very long, and

27   physical fatigue.  AR 42.  During a typical day, Plaintiff gets up, probably showers, eats, and lays

28                                                      2

1    down and rests for a while; then hopefully, she has enough energy to get up and perform a

2    household task, after which she lays down to take another nap. AR 43. She does not have the

3    strength to hold her three-year-old granddaughter or her one-year old grandson. AR 50. Although

4    her fatigue improved when her doctor began treating her anemia, Plaintiff still suffers from

5    symptoms due to her chronic fatigue. AR 43-44. Plaintiff is not taking medication from chronic

6    fatigue. AR 44.

7         If she moves for 15 minutes, Plaintiff hurts and is short of breath; she must sit down and

8    rest for a few minutes. AR 44. She can sit for an hour, but after that her body gets stiff and she

9    wants to get up and move around; if she can get up and move around for a minute or two, she can

10   sit back down again. AR 46.

11        Plaintiff suffers from memory loss: she is unable to bring up "something of the past" in

12   conversation, forgets what she wants to say, reads the same page more than once, or the same

13   sentence more than once. AR 45, 48. Plaintiff did not report her memory issues to her doctor.

14   AR 49. She testified that the "inability to hold a thought very long to be able to process all the

15   steps that might be involved in [learning new computer software or programs] would be extremely

16   challenging." AR 63.

17   **B.    Material Medical Evidence of Record**

18        1.    Primary Care Providers (*passim*)

19        Family Nurse Practitioner Pamela Blaufarb is listed as Plaintiff's primary care provider

20   starting in May 2013 through at least March 2015. *See* Exs. 1/F, 2/F, 8/F, 10/F. Nurse Blaufarb

21   noted on every progress note that Plaintiff presented a "psychologically appropriate mood and

22   affect." *See id.* In October 2013, she noted Plaintiff was "positive for depression, but improving."

23   AR 423. In January 2014, she recommended increasing Plaintiff's Amitriptyline dosage as it

24   "may not only help your neuropathy but will help your sleep." AR 422. Although Plaintiff had

25   made appointments because of "anxiety and depression" in June 2014, Nurse Blaufarb

26   consistently diagnosed Plaintiff with chronic fatigue syndrome ("CFS"), not depression. AR 546.

27   In March 2015, Nurse Blaufarb completed a CFS Residual Function Capacity ("RFC")

28                                                      3

1 Questionnaire for Plaintiff in connection with Social Security Disability proceedings. *See* Ex. 8/F.

2 When asked to list whether Plaintiff had "other diagnoses," Nurse Blaufarb listed a number of

3 diagnoses, but did not include depression. AR 524. She explicitly excluded any psychiatric

4 impairments as a cause for Plaintiff's fatigue, although she noted there was "some depression."

5 AR 525. She reported Plaintiff's self-report of short term memory or concentration impairment

6 as part of Plaintiff's CFS symptoms. AR 525. She also concluded that Plaintiff would be

7 incapable of even a low stress job because of "depression and overwhelming fatigue." AR 526.

8      In September 2015, Physician's Assistant ("PA") Carlo Ferrarone assessed Plaintiff as

9 suffering from depression, marked by fatigue, daily sadness, insomnia, lack of

10 concentration/memory, and referred Plaintiff for a mental health consultation. AR 593.

11 September 2015 is the first time any of Plaintiff's providers added "depression" to her listed

12 diagnoses. *See* AR 543-47. PA Ferrarone also mentioned that Plaintiff's use of antidepressants

13 correlates to better sleep (AR 592), but did not identify the antidepressant Plaintiff takes.

14      2.    Dr. Melody Samuelson, Psy. D. (Ex. 4/F)

15      On August 30, 2014, Dr. Samuelson performed a complete mental status evaluation

16 ("MSE") of Plaintiff on behalf of the SSA. AR 458-465. She noted Plaintiff had no history of

17 mental health treatment, is on medication for physical problems, and denies any in- or out-patient

18 treatment for psychiatric conditions. AR 459.

19      Plaintiff reported a history of diabetes and CFS. Plaintiff reported she could take care of

20 self-dressing, self-bathing, and personal hygiene, but she has difficulty completing complex

21 household tasks that require endurance. AR 459-60. She is able to pay bills and manage cash

22 appropriately, but she has difficulty maintaining focus or making complex decisions. AR 460.

23 She can go out alone; she has poor relationships with friends and family. AR 460. She needs

24 assistance with transportation on occasion, but is still able to drive. AR 458, 460. She is too

25 fatigued to shop and drive. AR 460. She is extremely limited in outside activities, but will go to

26 an occasional movie. AR 460.

27      Dr. Samuelson observed that Plaintiff was coherent and organized, showed no tangentiality

28

4

United States District Court
Northern District of California

1    or loosening of associations, and was relevant and non-delusional.  AR 460.  She noted Plaintiff's

2    mood was moderately depressed and her affect mildly flat and congruent with thought content;

3    Plaintiff reported feelings of depression but denied any suicidal ideation.  AR 461.  Her speech

4    and orientation to time, place, and purpose were normal.  AR 461.  Her memory immediately upon

5    presentation and after delay was four out of four; she could identify the President of the United

6    States, could describe Martin Luther King, Jr., and knew the components of water.  AR 461.

7    Plaintiff was not able to identify the location of the Sahara Desert.  AR 461.  Plaintiff could count

8    backwards from 20, could count the months of the year backwards, could perform simple

9    calculations without using her fingers to assist; however, she was unable to perform these tasks

10   without repeating instructions.  AR 461.  Her insight and judgment was intact.  AR 461.

11          Dr. Samuelson diagnosed Plaintiff as suffering from Cognitive Disorder Not Otherwise

12   Specified ("NOS") and Major Depressive Disorder; she deemed Plaintiff's condition "fair" from a

13   psychiatric standpoint.  AR 462.  Dr. Samuelson found Plaintiff to be moderately limited in in her

14   ability to: 1) understand, remember, and carry out simple one- or two-step job instructions; 2) do

15   detailed and complex instructions; 3) relate and interact with co-workers and public; 4) maintain

16   concentration and attention, persistence, and pace; 5) associate with day-to-day work activity,

17   including attendance and safety; 6) accept instructions from supervisors; 7) maintain regular

18   attendance in the work place and perform activities on a consistent basis; and 8) perform work

19   activities without special or additional supervision.  AR 463.  She assessed Plaintiff's Global

20   Assessment of Functioning ("GAF") as 44.  AR 462.

21          3.      Dr. Daniel Creegan, Psy. D. (Ex. 10/F)

22          Dr. Creegan examined Plaintiff on October 15, 2015 after PA Ferrarone referred Plaintiff

23   for a mental health screening.  AR 582-583, 593.  Plaintiff indicated she wanted to give therapy a

24   try after her doctor recommended it.  AR 582 ("I would like to increase happiness, decrease

25   sadness.").  After performing a depression screening, Dr. Creegan assessed Plaintiff as suffering

26   from "mild depression."  AR 582.  He also noted Plaintiff was homeless.  AR 582-83.

27          Plaintiff's MSE that day was normal: she was alert and oriented; her appearance

28                                                        5

1    appropriate; her attitude cooperative; her speech normal; her thought content appropriate and

2    logical; her cognitive functioning intact; her behavior and affect appropriate; her thought processes

3    intact, coherent, and appropriate; she reported no memory problems; her motor activity

4    appropriate; her abstraction intact; her insight appropriate, thoughtful, and reflective; her judgment

5    intact; and s no disturbances of perception. AR 583. Her mood was euthymic. AR 583. Dr.

6    Creegan diagnosed depression and recommended individual therapy, as well as attending a

7    depression group. AR 583. There is no indication in the record that Plaintiff attended individual

8    therapy sessions or joined a depression group. *See* AR. There is also no indication Dr. Creegan

9    prescribed medication for her depression.

10   **C.     The ALJ's Findings**

11          The regulations promulgated by the Commissioner of Social Security provide for a five-

12   step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. §

13   404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or

14   negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer*

15   *v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential

16   inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r*

17   *Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the

18   Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v.*

19   *Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

20          The ALJ must first determine whether the claimant is performing "substantial gainful

21   activity," which would mandate that the claimant be found not disabled regardless of medical

22   condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i), (b). Here, the

23   ALJ determined that Plaintiff had not performed substantial gainful activity since April 15, 2014.

24   AR 14.

25

26   _____

27   [1] Disability is "the inability to engage in any substantial gainful activity" because of a medical
     impairment which can result in death or "which has lasted or can be expected to last for a
     continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

28

1         At step two, the ALJ must determine, based on medical findings, whether the claimant has

2    a "severe" impairment or combination of impairments as defined by the Social Security Act. 20

3    C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20

4    C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe

5    impairments: diabetes mellitus, peripheral neuropathy, anemia, and chronic fatigue. AR 14.

6         If the ALJ determines that the claimant has a severe impairment, the process proceeds to

7    the third step, where the ALJ must determine whether the claimant has an impairment or

8    combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt.

9    P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's

10    impairment either meets the listed criteria for the diagnosis or is medically equivalent to the

11    criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age,

12    education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff

13    did not have an impairment or combination of impairments that meets the listings. AR 18.

14         Before proceeding to step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §

15    404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical

16    limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing

17    an individual's RFC, the ALJ must consider all of the claimant's medically determinable

18    impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. §

19    404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to "perform sedentary work as

20    defined in 20 CFR [§] 404.1567(a) and 416.967(a) except that she is able to occasionally climb

21    ramps and stairs; never climb ropes, ladders, and scaffolds; and occasionally crawl. The claimant

22    should avoid concentrated exposure to extreme heat and avoid all unprotected heights or moving

23    mechanical parts." AR 18.

24         The fourth step of the evaluation process requires that the ALJ determine whether the

25    claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv);

26    404.1520(f). Past relevant work is work performed within the past 15 years that was substantial

27    gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. §

28    

7

1    404.1560(b)(1).  If the claimant has the RFC to do his past relevant work, the claimant is not

2    disabled.  20 C.F.R. § 404.1520(a)(4) (iv).  Here, the ALJ determined that Plaintiff could perform

3    past relevant work as a mortgage clerk and as a receptionist.  AR 23.

4           In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

5    are other jobs existing in significant numbers in the national economy which the claimant can

6    perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

7    404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of

8    a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404,

9    Subpt. P, App. 2.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on

10   the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the

11   ALJ determined that "the claimant retains the residual functional capacity to perform the jobs of

12   mortgage clerk and receptionist as the jobs are generally performed.  The [ALJ] relied on the

13   statement of the vocational expert that her testimony was consistent with the information provided

14   in the" Dictionary of Occupational Titles.  AR 24.

15   **D.      The ALJ's Decision and Plaintiff's Appeal**

16          On September 1, 2016, the ALJ issued an unfavorable decision finding that Plaintiff was

17   not disabled.  AR 9–11.  This decision became final when the Appeals Council declined to review

18   it on November 8, 2016.  AR 1–3.  Having exhausted all administrative remedies, Plaintiff

19   commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On May 22, 2017,

20   Plaintiff filed the present Motion for Summary Judgment.  On June 19, 2017, Defendant filed a

21   Cross-Motion for Summary Judgment.

22                                        **LEGAL STANDARD**

23          This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

24   U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by

25   substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*,

26   246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence means more than a

27   scintilla but less than a preponderance" of evidence that "a reasonable person might accept as

28                                                  8

1  adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)

2  (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The

3  court must consider the administrative record as a whole, weighing the evidence that both supports

4  and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

5  However, "where the evidence is susceptible to more than one rational interpretation," the court

6  must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

7  Determinations of credibility, resolution of conflicts in medical testimony, and all other

8  ambiguities are to be resolved by the ALJ. *Id.*

9      Additionally, the harmless error rule applies where substantial evidence otherwise supports

10  the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not

11  reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d

12  1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56

13  (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party

14  attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409

15  (2009)).

16                          **DISCUSSION**

17      An ALJ may only reject an examining doctor's opinions for specific and legitimate reasons

18  based on substantial evidence of record. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

19  Here, the ALJ gave "no weight" to Dr. Samuelson's assessments for several reasons, and Plaintiff

20  contends most of these reasons were not supported by substantial evidence. Plaintiff does not

21  contend the ALJ erred at Step 2 of the sequential analysis; instead, she argues that the ALJ failed

22  to properly evaluate her mental impairments in combination with her other functional limitations,

23  which together should have warranted a disability finding. Pl.'s Mot. at 9. Plaintiff also argues

24  the ALJ erred by not posing to the VE any hypotheticals that included the moderate limitations Dr.

25  Samuelson had found. *See* Reply at 7.

26

27

28                          9

**A.** **Plaintiff's Arguments**[2]

    1.    Diagnosis Unsupported by Clinical Findings

First, the ALJ discounted Dr. Samuelson's diagnosis of a cognitive disorder because it was based on Plaintiff's complaint that she was struggling with memory function, but the MSE Dr. Samuelson administered did not disclose memory problems. Plaintiff was able to recall items immediately and after a delay, and she could identify the President of the United States. The ALJ also found the results of the MSE, which were normal but for Plaintiff's mood, which was depressed with a flat affect, did not support Dr. Samuelson's assessment. AR 16.

Plaintiff argues Dr. Samuelson's assessment was in fact based on abnormal clinical findings: Plaintiff only performed the memory drills after repeated instructions, and she could not answer on what continent the Sahara Desert is located. Pl.'s Mot. at 7 (citing AR 461). Furthermore, Dr. Samuelson noted Plaintiff's "mood was moderately depressed and her affect was mildly flat with congruent thought content" and that she expressed feelings of hopelessness, helplessness, and/or worthlessness—all of which Plaintiff argues are abnormal MSE findings. Pl.'s Mot. at 7. Plaintiff also argues that "an individual who completed non-special education high school education would presumably know" where the Sahara Desert was located.[3] Pl.'s Mot. at 7.

    2.    No History of Treatment

Second, the ALJ discounted Dr. Samuelson's opinion because Plaintiff had no history of hospitalization or inpatient care for any emotional disorder. She was evaluated by Dr. Creegan who reported normal MSE results, diagnosed "mild depression" after administering a depression

---

[2] The ALJ also discounted Dr. Samuelson's opinion because state agency consultants determined Plaintiff's affective disorders and cognitive disorders were non-severe. AR 17 (citing Exs. 1A, 2A, 5A, and 6A). The consultants determined Plaintiff's emotional and cognitive conditions did not lead to a loss of ability for basic work activity. AR 17. Plaintiff does not challenge this reason the ALJ articulated for discounting Dr. Samuelson's opinion. *See* Pl.'s Mot.

[3] The Court finds this presumption is unwarranted. *See, e.g.*, U.S. Gov't Accountability Office, GAO-16-7, *Most Eighth Grade Students Are Not Proficient in Geography* (2015); Max Fisher, *Half of Americans can't identify Syria on a map (young Republicans do slightly better)*, Wash. Post (April 26, 2013), https://www.washingtonpost.com/news/worldviews/wp/2013/04/26/half-of-americans-cant-identify-syria-on-a-map-young-republicans-do-slightly-better/?utm_term=.d8152a055743.

10

1     test questionnaire ("PHQ"), and recommended "very conservative care" through therapy. AR 16.

2     Plaintiff's treating physicians did not report any significant emotional symptoms, and there is no

3     evidence of treatment for emotional symptoms. AR 17.

4           Plaintiff argues that "[i]t is well established that primary care physicians (those in family

5     or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" Pl.'s

6     Mot. at 7 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). She asserts that the

7     ALJ's rationale is invalid because treatment for psychiatric disorders can be administered by

8     primary care physicians and not just a board-certified psychiatrist or psychologist. *Id*. at 8.

9     Plaintiff argues that—like in *Sprague*—her primary care physicians identified and treated her

10     depressive symptoms as her records show that she medicated with the anti-depressant,

11     Amitriptyline. *Id*. (citing AR 307, 345, 357). Plaintiff "periodically reported depression and

12     anxiety to her primary care medical source." *Id.* (citing AR 385 (listing acupuncture, anxiety and

13     depression as reasons for appointment in June 2014), 392 (same), 423 (positive for depression but

14     improving in October 2013), 543–46 (diagnosis of depression added in October 2015), 586

15     (diagnosis of depression noted in February 2016), 593 (mental health referral to Dr. Creegan)).

16     She contends she was referred to Dr. Creegan because of her "unremitting depressive symptoms"

17     and argues this referral would not have been necessary if Plaintiff's mental impairments were only

18     mild/non-severe. *Id.* at 8 (citing AR 582–83).[4] Plaintiff argues that Dr. Creegan offered no

19     contrary opinions to those of Dr. Samuelson and that Dr. Creegan's recommendation for

20     individual and group therapy indicates Plaintiff's depression was not mild. *Id*.[5]

21     **B.    Analysis**

22           As an initial matter, many of Plaintiff's arguments are not supported by evidence in the

23

24

25 [4] The Court observes Dr. Creegan noted that Plaintiff was referred to a mental health consult because of "chronic disease: diabetes, chronic fatigue and anemia" – not "unremitting depressive symptoms." AR 582.

26

27 [5] Plaintiff offers no support for her "presumption" that only persons with severe depression attend individual and/or group therapy.

28

United States District Court
Northern District of California

1    record.  For example, Plaintiff does not cite, and the Court did not find, any evidence that a doctor

2    prescribed Amitriptyline for depression; the only explanation for the prescription is that it would

3    help Plaintiff with neuropathy and sleep.  AR 422.[6]  Similarly, while Plaintiff listed "depression"

4    as one of the reasons for several of her appointments in June 2014, and while Nurse Blaufarb

5    mentioned "some depression" in 2013 and 2014, it is not until September 2015 that depression is

6    listed as a diagnosis in Plaintiff's records.  There simply is no evidence in the record that

7    Plaintiff's primary care provider treated her for depression.  The AR documents a single mental

8    health consultation, with no evidence Plaintiff attended the recommended individual therapy

9    sessions.  During that mental health intake, Dr. Creegan performed a mental status exam and noted

10   that Plaintiff's thought content and process were appropriate and coherent, and that Plaintiff

11   reported no memory problems.  AR 582.  The Court thus finds the evidence in the record does not

12   establish Plaintiff's depression was severe or disabling in and of itself, and that the ALJ's finding

13   that Plaintiff's depression was non-severe is supported by substantial evidence.

14        Nevertheless, the record shows that Nurse Blaufarb indicated Plaintiff had experienced

15   episodes of depression, PA Ferrarone referred Plaintiff for a mental health consultation after

16   assessing Plaintiff for depression, and Dr. Creegan diagnosed Plaintiff as suffering from mild

17   depression.  The record thus does establish Plaintiff suffered from depression.  Indeed, the ALJ

18   concluded the medical findings were "consistent with respect to the existence of a depressive

19   disorder but the abnormal clinical signs are not of a level to preclude basic work activity."  AR 17.

20   Concluding that Plaintiff's depression was non-severe, the ALJ did not evaluate the impact of

21   Plaintiff's depression when evaluating Plaintiff's RFC.  *See* AR 17-23.  Nurse Blaufarb reported

22   Plaintiff was not a malingerer, emotional factors contributed to the severity of her symptoms and

23   physical limitations, Plaintiff's impairments were reasonably consistent with the symptoms and

24   functional limitations described in the questionnaire, Plaintiff's symptoms would frequently

25

26

27   [6] Plaintiff represents that she takes this medication for depression (*see* AR 307), but does not
     identify any records showing this medication was prescribed for depression rather than neuropathy
     and sleep.

28                                              12

1    interfere with the attention and concentration needed to perform even simple work tasks, and

2    Plaintiff's depression and overwhelming fatigue prevented her from tolerating even a loss stress

3    job.  AR 525-26.  Dr. Samuelson opined Plaintiff was moderately limited in a number of

4    functional areas.  AR 462-63.  After discounting Dr. Samuelson's and Dr. Creegan's opinions, the

5    ALJ found Plaintiff had mild limitations in concentration, persistence, or pace.  AR 17.  But while

6    the ALJ explicitly addressed Dr. Samuelson's findings regarding the impact of Plaintiff's

7    depression on her ability to work, the ALJ did not address Nurse Blaufarb's March 2015 opinion

8    that Plaintiff's depression contributed to Plaintiff's total inability to work.[7]

9         The ALJ was required to consider the impact (if any) of Plaintiff's non-severe depression

10   when assessing Plaintiff's RFC.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,

11   1164 (9th Cir. 2008) (ALJ must consider limitations imposed by all of claimant's impairments

12   when assessing RFC, even those that are not severe:  "Even though a non-severe impairment

13   standing alone may not significantly limit an individual's ability to do basic work activities, it

14   may—when considered with limitations or restrictions due to other impairments—be critical to the

15   outcome of a claim"); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (error for

16   ALJ not to consider how non-severe symptoms of fatigue and pain, which affected claimant's

17   ability to perform work activities, affected claimant's RFC).  The ALJ failed to address Plaintiff's

18   non-severe depression when evaluating her RFC.  The Court cannot find this error was harmless.

19   For example, the ALJ did not address Nurse Blaurfarb's opinion regarding the impact of

20   Plaintiff's depression elsewhere in her decision.  The ALJ also did not include any non-exertional

21   limitations in Plaintiff's RFC that could take into account the potential impact of Plaintiff's

22   depression on her attention and concentration, which Nurse Blaufarb opined would be

23   "frequently" affected by Plaintiff's "fatigue or other symptoms" – which include depression.  *See*

24   AR 18, 526.

25

26   [7] The ALJ addresses Nurse Blaufarb's CFS Questionnaire, but does not acknowledge Blaufarb's
     statement that her conclusion that Plaintiff is incapable of performing even a low stress job is
27   based on "depression and overwhelming fatigue."  *Compare* AR 526 *with* AR 20-22 (analyzing
     Ex. 8/F).

28                                               13

1    The Court must remand this matter for further administrative proceedings so that the ALJ

2    can evaluate whether Plaintiff's non-severe depression affects Plaintiff's RFC. The ALJ shall

3    further develop the record if necessary.

4                                          **CONCLUSION**

5    In reviewing a Social Security Commissioner's decision, a court may remand the case

6    "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292.

7    Typically, when a court reverses an ALJ's decision, "the proper course, except in rare

8    circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

9    *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further

10   proceedings is appropriate where there are outstanding issues that must be resolved before a

11   disability determination can be made, and it is not clear from the record that the ALJ would be

12   required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v.*

13   *Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the

14   consideration of new evidence instead of awarding benefits).

15   The Court concludes this case should be remanded for further administrative proceedings

16   for the reasons stated above. In addition, because this evidence may affect other portions of the

17   decision, the ALJ shall determine if any further evaluation is required based on the issues Plaintiff

18   raises here. For these reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Summary

19   Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the

20   ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance

21   with this Order.

22   **IT IS SO ORDERED.**

23

24   Dated: August 22, 2017

25   _____

26   MARIA-ELENA JAMES
     United States Magistrate Judge

27

28                                              14